On rights between parties to sale in violation of Bulk Sales Law, see note in 5 A. L. R. 1517.

---

WILLIAMS, Respondent, v. AETNA INSURANCE COMPANY, Appellant.

(206 N. W. 419.)

(File No. 5477.    Opinion filed December 9, 1925.)

1. **Insurance—Contracts—Policy, Issued by Agent's Wife Without Knowledge of Insured, Risk Having Changed from Resident to Commercial, Held Not Binding Contract.**

    Insurance policy, issued by wife of company's agent during agent's sickness, and without knowledge of insured, who had agreement with agent to renew insurance when due, but had sold building on contract to one who had procured other insurance, and had changed risk from resident to commercial, held never agreed to by parties, and not a binding contract.

2. **Insurance—Owner, Acquiring Contract Purchaser's Interest in Insurance, is in no Better Position to Increase Purchaser's Interest Than Purchaser Himself.**

    Owner of building who has acquired interest of purchaser on contract in insurance policy by assignment, after property was destroyed, is in no better position to increase purchaser's interest in insurance than would be the purchaser himself.

Appeal from Circuit Court, Lake County; Hon. John T. Medin, Judge.

3—Vol. 49, S. D.

Action by Zenas Williams against the Aetna Insurance Company. From a judgment for plaintiff, and from an order of the court overruling a motion for new trial, defendant appeals. Reversed, with directions.

*Cherry & Davenport,* of Sioux Falls, for Appellant.
*Ira F. Blewitt,* of Madison, for Respondent.

(1)   To point one of the opinion, Appellant cited:  Nordness v. Mut. Cash Guaranty Ins. Co., 22 S. D. 1, 114 N. W. 1092; Brink v. Merchants & Farmers U. M. Ins. Ass'n, 17 S. D. 235, 95 N. W. 930; Clark v. Ins. Co. of North America (Me.), 34 L. R. A. 276; Taylor v. Phoenix Ins. Co., 2 N. W. 499; Piedmont & Arlington Ins. Co. v. Ewing, 92 U. S. 377, 23 L. ed. 610; Kimball v. Lion Ins. Co., 17 Fed. 625; German Ins. Co. v. Downman, 115 Fed. 481; Taylor v. Insurance Co., 107 Ia, 275, 77 N. W. 1032; MacCoon Co. v. Oshkosh Mut. Fire Ins. Co., 69 Wis. 564, 35 N. W. 12; Johnson v. Mennonite Mut. Fire Ins. Co., 100 Kan. 53, 163 Pac. 1074; Idaho Co. v. Firemen's Fund Ins. Co., 29 Pac. 826; Burman v. N. B. & Merc. Ins. Co., 132 N. Y. S. 392; Pennsylvania Fire Ins. Co. v. Sorrells, 98 S. D. 358; Globe Mut. Life Ins. Co. v. Wolff, 95 U. S. 326, 24 L. ed. 387; Kline Bros. & Co. v. Royal Ins. Co., 192 Fed. 378; Waterloo Lbr. Co. v. Des Moines Ins. Co. (Ia.), 138 N. W. 509; Carlson v. Supreme Court Council, 115 Cal. 466, 47 Pac. 375.

Respondent cited:  Dibble v. Northern Assurance Co., 70 Mich. 1, 14 A. S. R. 470; Triple Land Co. of Ind. v. Mutual Insurance Co., 121 Ala. 138, 77 A. S. R. 34; Hartford Streans v. Lasher Stocking Co., 66 Vt. 439, 44 A. S. R. 859; New York Life Insurance Company v. Mason, 235 S. W. 442, 19 A. L. R. 618, 14 R. C. L. 899, 3 R. C. L. Supp. 310.

(2)   To point two, Appellant cited:  Cooley's Brief IV, 3108; Webb v. Concordia Fire Ins. Co. (Mich.), 132 N. W. 523; Tabor v. Continental Ins. Co. (Mass.), 100 N. E. 636; Austin v. Dixie Fire Ins. Co., (Mass.), 122 N. E. 382; Goodwin v. Mer. & Bank Mut. Ins. Co. (Ia.), 92 N. E. 894; Smith v. American Ins. Co. (Mich.), 143 N. W. 54; Russell v. Elliott (S. D.), 186 N. W. 824.

BURCH, C.  The plaintiff, Zenas Williams, owner of a building used as a dwelling in the city of Madison S. D., on the 14th

of October, 1917, procured a policy of insurance No. 680 for $1,000 in the Aetna Insurance Company through Phil Sheridan, agent of said company, and a number of other insurance companies. This policy was written for a term of three years at a rate of 80 cents per hundred. Plaintiff says that, shortly after taking out the above-mentioned policy, he told Phil Sheridan to renew the policy when it expired, and if he, Williams, was not here he could get the premium of the Dakota State Bank. On November 8, 1919, plaintiff sold his building to one Borecky under a contract for deed. In June, 1920, plaintiff moved from Madison, S. D., to Plainview, Minn., and the place was used by Borecky for the storage of hides and metal, thereby becoming a commercial risk instead of a dwelling house risk. Nothing was done in reference to the policy then on the building written in favor of the plaintiff, but on March 29, 1920, Borecky took out a policy of insurance in the Hartford Insurance Company, of which Phil Sheridan was also agent, for $2,000, with a loss payable clause attached, making the loss payable to Zenas Williams as his interest might appear. At the time the policy of insurance to Williams expired, on the 14th of October, 1920, Phil Sheridan was sick, and confined to his home and bed in Madison. While Sheridan was sick, his wife looked after the office, and renewed all policies that expired during the time. On the 14th of October, 1920, she renewed policy No. 680 for another three years at the same premium in the same company covering the building as a dwelling house (the renewal being a copy of the earlier policy), signed Phil Sheridan's name to the policy as agent, and mailed the policy to the plaintiff, Williams, addressed to him in Madison, S. D. This new policy was No. 852, and is the policy upon which this suit is based. Both policies were in the South Dakota standard form. As to her authority and acts in issuing said policy, Mrs. Sheridan testified:

"My husband, a little over a week before October 14, 1920, became very ill. He was in such condition he was not able to attend to business. He talked about his business considerable. It was on account of his illness that he asked me to take care of the insurance, and renew some policies. He was conscious. He asked me to look after any or all that expired during that time. We talked about the Zenas Williams policy in particular; about

the address to which it was sent. I don't recall whether it was on that day, but we talked about it.

"Q. He told you to write that policy before you went down? A. No; I noticed that policy was to be issued. We had a conversation concerning that policy before and on the 14th of October, about the address to which it was to be sent.

"Q. Zenas Williams was not living in Madison on October 14, 1920, was he? A. I don't know. I did not know on October 14, 1920, whether he was living in Madison or not. I was instructed to, and I did, address the envelope to Zenas Williams, Madison, S. D. I never had any conversation with Zenas Williams prior to October 14, 1920, about any policy of insurance to be issued to him nor after that date."

After Sheridan's recovery there is some evidence, though this is disputed, that Sheridan, when he discovered the renewal, wrote Williams requesting him to return the policy; that there had been a mistake in issuing it. Williams denies receiving any such letter, and had no recollection of receiving the renewal policy. On the 22d of November the building was damaged by fire to the extent of more than $3,000. After the fire, Williams came to Madison, and in a conversation with Sheridan learned that a renewal policy had been issued, and obtained a copy of the written portions of such policy. Sheridan also gave notice to the company that the building had been destroyed. Williams' interest in the property under his contract with Borecky at the time of the fire was $915, with some interest. A few days afterwards Mr. Hoyt, the general agent of the defendant company, came to look over the loss, and about the same time the agent of the Hartford Fire Insurance Company came to Madison. Williams, Borecky, and the agents of the two companies had some conversation relative to the amount of damage, after having obtained a nonwaiver agreement, signed by Williams and Borecky, whereby it was agreed that any negotiations then to be undertaken should not constitute a waiver of any of the conditions of the policy nor of any defense that either of the companies might have affecting their liability. No premium was collected by Sheridan before the fire, but the $8 was included in his account with the company. Shortly after the fire the plaintiff insisted on paying a higher rate than the dwelling house rate of 80 cents per hundred for three years, and tendered $17.60, the

correct premium on a commercial risk, which Sheridan refused to receive for the company, but which he finally did take, stating that he would hold it until it could be determined to whom it belonged. Plaintiff brings this action to recover the full amount of insurance under the renewal policy No. 852. The case was tried to a jury, and the jury found in favor of the plaintiff for $1,133,38, the full amount of the policy, with interest. Judgment was entered in accordance with such verdict. Thereafter defendant moved for a new trial, and this appeal is from the judgment and order of the court overruling the motion for new trial.

Appellant contends that no contract of insurance was entered into; that the minds of the parties never met; that the mind of the appellant through its agent Sheridan never operated upon the question of whether or not the policy in question should issue. This presents the validity of the contract of insurance, and should receive our first attention.

Since the jury found in favor of plaintiff, we shall treat all disputed evidence as found in plaintiff's favor; consider that Williams made the order to Sheridan to renew his policy, as he says he did; that the wife of Sheridan, as subagent, was fully empowered to issue a valid contract of insurance; that the delivery of the policy was made in the manner claimed; and that, while the premium was not paid, credit was extended therefor, and no advantage can be taken by appellant for that reason.

[1, 2] When policy No. 680 was issued, the building was owned by Williams, and occupied as a dwelling house. While it was still so owned and occupied, Sheridan was directed by Williams to renew the policy when it expired. We shall assume that Williams made this order in good faith, honestly desiring valid insurance, and that Sheridan so understood him. After this Williams sold the building to Borecky, and the use of the building was changed so that it became a commercial risk, and a renewal of the old policy would not be effective as insurance. Good faith would not permit Sheridan to renew the dwelling house policy. To deal honestly with Williams he must protect him with a valid insurance policy collectable in the event of loss. In March, 1920, about eight months before policy No. 680 expired, Borecky asked Sheridan for insurance. It appears from the record that Borecky did not fix the amount, but asked for all the insurance the build-

ing would carry. Sheridan, upon this request, wrote a policy of insurance for Borecky in the Hartford Company for $2,000, with a loss payable clause attached, making the loss payable to the then record owner, Williams, as his interest might appear. This was a usual and proper way to protect' both Williams and Borecky. By doing this Sheridan complied with the instructions of Williams to keep his insurance in force. We cannot presume that Williams desired to be overinsured and to pay a premium for a policy which could not increase his recovery, but which, if it had any validity, would inure to the benefit of Borecky or prorate with the other company. The renewal of policy No. 680 exactly as originally written, not by Sheridan, but by his wife, who had no knowledge of the building or its use, was evidently a mistake. It had no validity as a contract of insurance upon that building in the form in which it was written. The building was not then a dwelling house, but was used for commercial purposes, and a commercial risk. If the company is to be bound by the knowledge of its agent at the inception of the contract, it is not the knowledge of Sheridan, but the knowledge of its subagent, Sheridan's wife, that binds it. Sheridan's wife had no knowledge that the building was not a dwelling house. After Sheridan recovered, he says he sought to recall the policy by writing Williams a letter to return it. While Williams says he did not receive the letter, he also says he did not receive the policy. Sheridan did not go to the bank and collect the $8 nor any other sum until after the fire. How, then, was Williams injured by the mistake in issuing the policy? After the fire, he discovered the mistake made by Mrs. Sheridan, and now asks the court to let him profit by the mistake, not the mistake that was actually made, but one binding the company. This is not a case where defendant's agent, with full knowledge of all the facts affecting a risk, furnished to a good-faith applicant for insurance a policy defective in form, where the company may be held to have contracted with knowledge of the facts and be held to a contract which in good faith it ought to have issued. In this case there should have been no renewal. We do not think plaintiff would have consented to take out this insurance had he been asked to do so before the fire, if he knew at the time he was already fully insured. There could be no legitimate object in his doing so. So far as the record discloses, Sheri-

dan, in issuing the policy to Borecky with the loss payable clause, allowed all the insurance that he thought the building would warrant. We are satisfied the policy sued upon was never agreed to by the parties, and the acts leading to the issuing of it did not constitute a contract binding either the insured or insurer. Why, then, does Williams press this suit? Perhaps it is because after the fire Williams procured Borecky's rights by assignment. If he can now collect his entire loss in this suit, he may be able to collect all under the other policy for Borecky's loss. It is obvious that he has no such right. His interest acquired by assignment is the interest of Borecky, and Williams is in no better position to increase Borecky's interest in the insurance than would Borecky be if he were plaintiff.

There are many assignments of error, but as this disposes of the case we will not consider the others.

The judgment and order overruling a motion for new trial are reversed, with direction to dismiss the action.

Note.—Reported in 206 N. W. 419. See, Headnote (1), American Key-Numbered Digest, Insurance, Key-No. 139(1), 26 C. J. Sec. 108; (2) Insurance, Key-No. 594, 26 C. J. Sec. 596.